María Ríos Méndez, Plaintiff and Appellee, *v.* Mario Juliá, Defendant and Appellant.

No. 6319. Argued February 1, 1935.—Decided January 30, 1936.

M. *Acosta Velarde* for appellant.    R. *Rivera Zayas* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

█ Where at the termination of a lease the lessor joins an action for the recovery of the rent with an action in damages because of the deteriorated condition of property, there is no improper joinder, as both actions have their origin in the same contract.    Subdivision 8 of section 104, Code of Civil Procedure.

There was no sufficient assignment of error with respect to the averment that the complaint was doubtful and ambiguous, and that the facts were not sufficiently stated in either cause of action.    So we content ourselves by saying that defendant was well enough apprized of the nature of the claims against him.    More specially, the first cause of action was settled by agreement between the parties.

█ The second assignment of error related to the admission by the court of various bills of merchants and artisans tending to show the amount that the plaintiff had paid out in attempting to restore the premises to the same state that, in her opinion, it had been when she leased the property to the defendant.    The plaintiff had testified to the changed condition of the premises and the bills were offered in evidence in their totality.    The damages to the property due to different causes were not segregated but the court was justified in receiving said bills for what they were worth in arriving at the ultimate result.    In point of fact the

opinion of the court shows that from the total amounts of these bills it made various deductions by reason of the fact that a great part of the charges were not due to the fault of the tenant. We agree with the appellee that the objections only went to the weight of the evidence. In any event, given the action of the court, the admission was harmless.

[3] The third assignment of error is an extraordinary one. The parties made a specific lease for a certain length of time at the rate of $175 per month. Then they agreed upon a tenancy from month to month at the rate of $200. The appellant insists that the court erred in saying that, under the contract, he was obliged to return the property in the same condition that it was at the date of its letting, namely, January 5, 1927. We think the evidence sufficiently demonstrates that originally by the contract and by its extension, the obligation devolved upon the appellant to return the property in the same condition as it was, with the exceptions provided by law. The appellee, besides, was not claiming anything more than the Civil Code would have granted her.

The fourth, fifth, and sixth assignments of error may be treated together. In between the time of the letting and the surrender of the property by the tenant, the cyclone of San Felipe, which took place on September 13, 1928, struck the island. The plaintiff on the witness stand admitted that the property was seriously damaged thereby. Indeed she said that of her various properties this was the one most injured. The court below made various deductions because of the cyclone, and the principal doubt that we have had is whether enough was deducted.

The property was originally a dwelling house. The plaintiff says that the understanding was that the property should not be used by Dr. Juliá as a clinic. Nevertheless, the proof tends to show that the property was used as a clinic and more or less with the knowledge and consent of the appellee. The plaintiff took the stand and gave testimony to the effect that the house had deteriorated considerably.

It is a fair presumption that the house was turned over to the appellant in good condition. When a dwelling house is converted into a clinic necessarily drastic changes must be made therein and if the plaintiff, as testified by her, found the house in a deteriorated condition, as shown by the first examination of the engineer within ten days after its surrender, the court was justified in making the conclusion that the deterioration was at least in part the result of the way it was handled and managed by the lessee.

As we have said, the court attempted to exclude all the damages due to the cyclone. The appellant insists that the plaintiff did not show that any of the deterioration was directly due to the acts of the defendant.

The appellant also urges strongly that a good part of the damages may have resulted in the period between the time that the house was surrendered and the time that the appellee took active charge of it. The house was given up by Dr. Juliá with notice to the owner on the 20th of October 1928. The correspondence and evidence in this case convince us that before November 1, 1928, the appellee caused the premises to be examined by the engineer Tallada Ríos; that as a consequence of this examination, or independently of it, Dr. Juliá made certain repairs on the house, evidently conceiving it his duty to do so. It is a fair inference that the engineer or agents of Dr. Juliá were in charge of the house for a short time after it was turned over to the appellee. Possibly an interval of a few days elapsed when no one was in charge thereof, but there is no presumption to that effect. On the contrary, normally it may be expected that a house will not suffer any change within a week or so at least after it has been abandoned. The principle of paragraph 31 of section 102 of the Law of Evidence would seem to be applicable, namely:

"That a thing once proved to exist continues as long as is usual with things of that nature."

There is no question that the repairs by Dr. Juliá were made between November 1st and 15th, 1928, and he so advised the appellee in a letter bearing the latter date. Likewise the court had a right to believe from the testimony that the first examination by the engineer was made before the 1st of November 1928. At the trial the appellant himself offered in evidence the report made by the said engineer. The appellant does not convince us, that on considering it, the court did not have a right to believe that the damages referred to were not the result of an abandonment of the house.

The plaintiff claimed $1,615.68 as damages. The court in its opinion said that the amounts paid out for damages due to the cyclone and some others should be deducted. Said the court:

"It appears from the documentary and parol evidence that the plaintiff disbursed for materials and workmanship for repairs to the house the sum of $1,370.00. There should be deducted from the above sum the following amounts: $107 paid to Succrs. of S. Albanese & Son for the tiles; $67.50 paid to Porto Rico Gas & Coke Co. for a stove; $106 for outside and inside painting paid to Crisóstomo González and José Ramírez, taking into consideration the estimate of Ramón Soler (plaintiff's exhibit No. 3) which amounted only to $68, in connection with the memorandum of contractor Tallada Ríos; $200 of the amount paid to Daniel García for carpentry work, as it included the repairs to the tower, that is, the placing of the tiles, a support for a vine, an awning for the front door, a wood and glass partition and general repairs to the balcony, which the defendant ought not to pay; $10.25 for Florentine glasses bought from Successors of A. Pérez & Brothers; $5.04 as per bill of Rolán & Tejedor for wire and galvanized iron the use of which has not been shown; and $46 as per bill of A. Mayol & Co., as the price of a sanitary water closet and a sink, owing to the fact that of the sanitary fixtures there were missing only a shower bath and a sanitary hopper for which $15 had been charged in the bill. Total of the sums deducted: $539.79.

"In short, considering the memorandum of engineer Tallada Ríos, submitted by defendant himself, who inspected the property in October and November, 1928, at the request of the plaintiff, and estimated

the damage which had not been repaired at $1,300, in connection with the testimony of engineer Eduardo Fossas who also inspected it in November 1928, at defendant's request; and as a result of the evidence as a whole, the sum of $840.21, which is the difference between the disbursements and the deductions, is sufficient in order to put the estate in the same good condition in which the defendant received it, on January 5, 1927, excluding the damages caused by the hurricane and neglect of the property since October 20, 1928, at which time it was returned.''

The appellant assigns error because the court relied so definitely on the report of the engineer. We lay no great stress on the fact that it was the defendant himself who presented the document or that he was admitting the facts contained therein, but from the document as presented, and the rest of the evidence there was no reason why the court should deduct from its findings damages due to the alleged abandonment.

Now the court struck $106 for painting because one of the bills presented was only for $68 and the plaintiff was claiming a greater amount. It is such a general practice for a landlord to have to paint the inside and outside of a house after a certain number of years that, without more specific proof of injury done by the defendant, we think that all the expenses for painting should be deducted. Some of them may have been due to the direct action of the cyclone or to the water that penetrates into a house as a result thereof.

It is a conceded fact that the tower of the house suffered damages because of the cyclone and so did the outside pergolas. The claim for carpentry was $400 and the court deducted $200. We are not convinced, however, that the actions of the defendant caused the plaintiff $200 worth of damages requiring carpentering work. But they amounted to something. We have also doubts as to whether greater deductions should not have been made. It is largely a matter

of guesswork, but taking the whole record, we think the recovery of the plaintiff should be limited to $500.

The judgment should therefore be modified and as modified affirmed.